## IN THE UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CRIMINAL NO. 24-_____** |
| **v.** | : | **DATE FILED:** |
| **JONATHAN BARGER** | : | **VIOLATIONS:** |
| **ALAN KANE** | | **18 U.S.C. § 157 (bankruptcy fraud – 2** |
| **DERRELL JOHNSON** | : | **counts)** |
| | : | **18 U.S.C. § 152(1) (fraudulent concealing of assets in a bankruptcy proceeding – 1 count)** |
| | : | **18 U.S.C. § 152(2) (false statements under oath in a bankruptcy proceeding – 1 count)** |
| | : | **18 U.S.C. § 152(3) (false declarations in a bankruptcy proceeding – 3 counts)** |
| | : | **18 U.S.C. § 152(4) (filing a false claim in a bankruptcy proceeding – 1 count)** |
| | : | **18 U.S.C. § 1343 (wire fraud – 1 count)** |
| | : | **18 U.S.C. § 1001 (false statement to the federal government – 3 counts)** |
| | : | **18 U.S.C. § 2 (aiding and abetting)** |
| | : | **Notice of forfeiture** |

## <u>INDICTMENT</u>

## <u>COUNT ONE</u>
### (Bankruptcy Fraud)

**THE GRAND JURY CHARGES THAT:**

### BACKGROUND

At all times relevant to the indictment:

1.     Defendant JONATHAN BARGER resided and worked in the Eastern

District of Pennsylvania.

2.     Defendant ALAN KANE was an attorney licensed in Pennsylvania who

resided and worked in the Eastern District of Pennsylvania.

3.     Defendant DERRELL JOHNSON, charged elsewhere in this indictment, resided and worked in the Eastern District of Pennsylvania.

4.     Defendant JONATHAN BARGER was the sole owner of Frankford Plating II, Inc., subsequently known as JB Frankford Plating, LLC ("Frankford Plating"), a metal chroming company that operated out of a facility located at 2505 Orthodox Street in Philadelphia, in the Eastern District of Pennsylvania.

5.     J.R., a person known to the grand jury, was the father-in-law of defendant JONATHAN BARGER. J.R. lived in a studio apartment in the building at 2505 Orthodox Street that housed Frankford Plating. J.R. died on or about June 5, 2020.

6.     Defendant ALAN KANE provided legal advice and representation for defendant JONATHAN BARGER, J.R., and Frankford Plating.

7.     Person A, known to the grand jury, conducted title searches for real estate located in the City of Philadelphia. Co-conspirator No. 1 also prepared deeds to effectuate the transfer of real estate and recorded deeds in Philadelphia.

8.     Person B, known to the grand jury, prepared deeds to effectuate the transfer of real estate and recorded deeds in Philadelphia.

### The United States Bankruptcy Code

9.     The United States Bankruptcy Code consisted of laws that enabled individuals and entities to discard debts and/or reorganize and repay their debts with the help of federal Bankruptcy Courts. Whenever a party filed a petition for bankruptcy in a United States Bankruptcy Court, an injunction called the "Automatic Stay" went into effect, which blocked creditors from proceeding with most actions to collect debts from the bankruptcy petitioner.

10.     There were different types of bankruptcies, which were usually referred to by their chapter in the United States Bankruptcy Code. Individual debtors seeking protection from creditors under the United States Bankruptcy Code could file petitions under either Chapter 7 of Chapter 13 of the United States Bankruptcy Code, depending on the specifics of their situations.

11.     "Chapter 7" bankruptcies, which were often called liquidation bankruptcies, provided for the liquidation of a debtor's estate, the depositing of all the liquidation proceeds into a bank account controlled by a bankruptcy trustee, the trustee's distribution of those proceeds to pay existing creditors, and then a discharge of all outstanding debts.

12.     "Chapter 13" bankruptcies enabled individuals to keep their assets if a trustee approved a plan by the debtors to repay their debts to their creditors over a time period that could range from three years to five years.

### Ownership of 2324 Loney Street

13.     In or around 1961, E.K. obtained title to residential real estate located at 2324 Loney Street in Philadelphia (the "Loney Street Property").

14.     In or about December 1973, E.K. transferred title to the Loney Street Property from herself individually to herself and her husband, as tenants-by-the entireties. E.K. and her husband had one son, W.K. For many years, E.K. and her family lived in the Loney Street Property.

15.     On or about August 3, 1977, E.K.'s husband died, and title to the Loney Street Property passed solely to E.K., who continued to live there.

16.     On or about January 1, 1997, E.K. died, and title to the Loney Street Property passed to W.K., who continued to live there.

17.     On or about September 22, 2016, W.K. died without leaving a will. W.K. had no spouse, no children, and no siblings. W.K. had first cousins, and under Pennsylvania law, title to the Loney Street Property passed to his cousins (the "K. Family heirs") when he died.

18.     One of W.K.'s cousins was M.B., who was named administratrix of W.K.'s estate in 2017.

19.     Shortly after W.K. died, M.B. began trying to settle the affairs of W.K.'s estate. Among other things, M.B. and her husband contacted the utility companies that had provided services for the Loney Street Property, had the utility accounts changed to their names and address, and began paying the utility bills for the Loney Street Property.

20.     M.B. and her husband also learned that W.K. had fallen more than $20,000 behind on the property taxes he owed to the City of Philadelphia for the Loney Street Property. M.B. and her husband hired a lawyer who contacted City officials to delay a sheriff's sale of the property. M.B. and her husband began making plans to sell the Loney Street Property and use some of the proceeds to pay the property tax debt to the City.

### The Recording of Fraudulent Deeds for 2324 Loney Street

21.     On or about May 23, 2017, Person B sent two emails to defendant DERRELL JOHNSON and attached to each email a draft of a fraudulent deed that purported to transfer ownership of the Loney Street Property from E.K. to J.R. in exchange for $90,000. The first draft of the fraudulent deed was backdated to November 23, 2009, more than 12 years after E.K.'s death. The second draft of the fraudulent deed was backdated to November 23, 2012, more than 15 years after E.K.'s death.

22.     On or about May 25, 2017, Person A knowingly and intentionally recorded a fraudulent deed at Philadelphia City Hall purporting to transfer ownership of the

4

Loney Street Property from E.K. to "Antonio Rossi," a person believed to be fictitious, on

November 23, 2009, in exchange for $25,000. The fraudulent deed contained forged signatures

of E.K., who had died on January 1, 1997, and "Antonio Rossi," as well as a forged notary stamp

for P.G., a licensed notary, and forged signatures of P.G.

23.      On or about June 9, 2017, Person A knowingly and intentionally recorded

a fraudulent deed at Philadelphia City Hall purporting to transfer ownership of the Loney Street

Property from "Antonio Rossi" to J.R. on June 7, 2017, in exchange for $15,000. The fraudulent

deed contained forged signatures of "Antonio Rossi," as well as a forged notary stamp for

A.M.S-S., a licensed notary, and forged signatures of A.M.S-S.

24.      On or about the same day, June 9, 2017, defendant JONATHAN

BARGER signed a check drawn on an account for Frankford Plating, which was made payable

to defendant DERRELL JOHNSON, in the amount of $5,518.

### The Application to the City for Property Tax Relief

25.      By in or about June 2017, the outstanding property tax debt owed to the

City of Philadelphia for the Loney Street Property was nearly $28,000.

26.      In or about May 2017, the City scheduled a sheriff's sale of the Loney

Street Property for July 2017.

27.      In or about late June 2017, J.R., with the help of defendant JONATHAN

BARGER, applied to the Philadelphia Department of Revenue for property tax relief through the

City's Owner-Occupied Payment Agreement ("OOPA") program, which allowed homeowners to

restructure their property tax debts if they could demonstrate that they resided in the property and

met certain financial requirements.

28.     The City's OOPA program provided for five "tiers" of payment agreements for taxpayers who lived in their homes. "Tier 4" OOPA agreements were among the most lenient and applied to taxpayers who could demonstrate that their monthly household income was at or below 30 percent of Area Median Income. Under Tier 4, qualified taxpayers would have to pay only 5 percent of their monthly household income to the City and would be entitled to a waiver of all interest and penalties that already had accrued on their back property taxes if they complied with the agreement.

29.     On or about June 28, 2017, J.R., with the help of his son-in-law, defendant JONATHAN BARGER, submitted an OOPA application that falsely represented that J.R. resided at the Loney Street Property. J.R.'s application also falsely stated that he had a net monthly household income of $1,200.

30.     To support his OOPA application, J.R. supplied two fraudulent earnings statements from Frankford Plating for June 2017, which purported to show that J.R. was working 40 hours a week at $8.50 an hour and had net pay of $535.44 every two weeks. In reality, J.R. received thousands of dollars every week in checks signed by his son-in-law, defendant JONATHAN BARGER, which were drawn on an account for Frankford Plating. In or about June 2017 alone, defendant BARGER signed at least seven checks drawn on a Frankford Plating account, all of which were made payable to J.R., which had a total value of approximately $16,820.

31.     To further support his OOPA application, J.R. provided the City with a phony Philadelphia Gas Works ("PGW") bill, addressed to J.R. at the Loney Street Property. The phony PGW bill, which was dated June 1, 2017, and covered the billing period of May 1 through

31, 2017, was created by altering an actual PGW bill that had been sent to defendant DERRELL JOHNSON on the same date for the same billing period.

32.　　J.R. further supported his OOPA application by providing a copy of a Pennsylvania driver's license that listed the Loney Street Property as his address. The license was not issued until June 27, 2017, the day before J.R., with the help of defendant JONATHAN BARGER, submitted the fraudulent OOPA application.

33.　　On or about June 30, 2017, the Philadelphia Department of Revenue, relying on the fraudulent representations contained in J.R.'s OOPA application, including that J.R. was the lawful owner and occupant of the Loney Street Property, granted a Tier 4 OOPA to J.R. Pursuant to that agreement, the City agreed to waive all interest and penalties on the outstanding property taxes owed on the Loney Street Property and further agreed that going forward, J.R. would have to pay only $54 a month toward his property tax debt.

34.　　On or about the same day, June 30, 2017, defendant JONATHAN BARGER signed a check drawn on a Frankford Plating account, which was made payable to defendant DERRELL JOHNSON in the amount of $5,000.

35.　　On or about July 19, 2017, the City canceled the sheriff's sale for the Loney Street Property.

36.　　Beginning in or about July 2017, defendant JONATHAN BARGER made the payments toward J.R.'s OOPA agreement by signing checks for $54 each month – or $108 for two months – made payable to the City of Philadelphia or its Department of Revenue, all drawn on accounts for Frankford Plating.

37.　　Defendant JONATHAN BARGER kept making these payments for his father-in-law, J.R., until at least January 5, 2019, when he signed a check drawn on an account

7

for in the name of "JB Frankford Plating LLC," for $108, which was made payable to the City of Philadelphia. The City deposited this check into an account at a Wells Fargo branch in Philadelphia, Pennsylvania on or about January 29, 2019.

38.    On or about January 31, 2019, funds to pay for this check were transferred from a bank account in the name of "JB Frankford Plating, LLC" at M&T Bank to the City's bank account at Wells Fargo Bank.

### The Lawsuits over the Loney Street Property

39.    In or around June 2017, M.B. and her husband learned that they were no longer listed on the utility bill accounts for the Loney Street Property. Further investigation led to the discovery of the fraudulent deeds that had been filed with the City of Philadelphia, which purported to transfer ownership of the Loney Street Property from E.K. to "Antonio Rossi" and then from "Rossi" to J.R.

40.    In or about August 2017, M.B. filed a lawsuit in the Philadelphia Court of Common Pleas against J.R. and "Antonio Rossi." In the lawsuit, M.B. sought a court order voiding the fraudulent deeds for the Loney Street Property. M.B. later amended the complaint to clarify that she was representing herself individually and the other K. Family heirs.

41.    Defendant ALAN KANE represented J.R. in opposition to the lawsuit.

42.    In or around August 2017, defendant ALAN KANE contacted P.G., the notary whose stamp and signature had been forged on the fraudulent deed that purported to transfer the Loney Street Property from E.K. to "Antonio Rossi" in 2009. P.G. told defendant KANE that P.G.'s stamp and signature had been forged on the fraudulent deed.

8

43.    On or about September 6, 2017, P.G. sent a letter to defendant ALAN KANE reiterating that P.G. had not signed or notarized the fraudulent deed and that the notary stamp and signature on the deed had been forged.

44.    Notwithstanding these representations from P.G., defendant ALAN KANE and J.R. continued to assert in court that J.R. was the lawful owner of the Loney Street Property.

45.    Additionally, on or about December 29, 2017, defendants JONATHAN BARGER and ALAN KANE caused Frankford Plating to file a claim for a mechanic's lien against the Loney Street Property in the Philadelphia Court of Common Pleas. In this claim, defendants BARGER and KANE falsely asserted that Frankford Plating was owed $133,900 for labor and materials it had provided to J.R. for renovations to the Loney Street Property. Defendants BARGER and KANE supported this false assertion by attaching a phony invoice from Frankford Plating to J.R., dated July 17, 2017, for $133,900.

46.    On or about February 13, 2018, defendants JONATHAN BARGER and ALAN KANE caused Frankford Plating to file an amended mechanic's lien relating to the Loney Street Property. Defendants BARGER and KANE supported this filing with a new version of the phony invoice from Frankford Plating to J.R., dated July 17, 2017, for $133,900. The two phony invoices differed from each other in at least three material ways: (a) whereas the first invoice included an Internet address for Frankford Plating, the second invoice did not; (b) whereas the second invoice contained a detailed description of the work allegedly performed by Frankford Plating at the Loney Street Property, the first invoice contained no such description; and (c) whereas the second invoice included a Frankford Plating logo, the first invoice did not.

47.     On or about June 11, 2018, defendants JONATHAN BARGER and

ALAN KANE caused Frankford Plating to file a counterclaim against the K. Family heirs in the

original lawsuit, which sought $133,900 for "unjust enrichment."

48.     On or about February 4, 2019, M.B. and Frankford Plating filed

competing motions for summary judgment in the litigation that M.B. had initiated. Responses to

those motions were due on March 7, 2019.

49.     On or about February 19, 2019, M.B. filed a motion for discovery

sanctions against J.R. A hearing on that motion was scheduled for March 7, 2019.

50.     On or about March 6, 2019, one day before the scheduled sanctions

hearing and the deadline for opposing motions for summary judgment, J.R., represented by

defendant ALAN KANE, filed a bankruptcy petition in the United States Bankruptcy Court for

the Eastern District of Pennsylvania. The filing of this petition caused an automatic stay of all

legal claims against J.R., including the lawsuit brought by M.B., on behalf of herself and the

other K. Family heirs, in the Philadelphia Court of Common Pleas.

**Defendant ALAN KANE's Representations to the Social Security Administration**

51.     At all times relevant to this indictment, the Supplemental Security Income

("SSI") program was a government benefits program administered by the United States Social

Security Administration ("SSA").

52.     Under the SSI program, the SSA provided monthly payments to adults

who were 65 or older or to people with disabilities who had limited incomes and financial

resources. The size of the monthly SSI benefits depended on a recipient's other sources of

income and financial resources.

53.    In or about 2009, J.R. applied for and began receiving SSI benefits from the SSA. In his application, J.R. represented that he was retired, had limited income, and paid approximately $500 each month in rent.

54.    Initially, J.R. received less than $50 a month in SSI benefits, but beginning in or about April 2010, his payments increased to slightly more than $260 per month.

55.    In or about June 2018, the SSA learned that J.R. was the titled owner of the Loney Street Property.

56.    On or about June 14, 2018, the SSA sent a letter to J.R. stating that since J.R. owned the Loney Street Property, he was no longer eligible for SSI benefits. The letter also stated that since J.R. had obtained title to the Loney Street Property in June 2017, the SSA had overpaid J.R. by more than $3,600 in SSI benefits, and J.R. would have to repay that money to the SSA. The letter stated that J.R. could appeal the decision or seek a waiver of his obligation to reimburse the SSA for the overpayments.

57.    On or about September 26, 2018, defendant ALAN KANE wrote a letter to the SSA, stating that J.R. had retained defendant KANE's law firm to represent him in seeking reconsideration of the SSA's decisions about J.R.'s SSI benefits.

58.    On or about October 26, 2018, defendant ALAN KANE, on behalf of J.R., wrote a letter to the SSA, which stated that J.R. did not actually own the Loney Street Property so: (a) there had been no overpayment of SSI benefits to J.R.; (b) J.R. should not have to repay any money to the SSA; and (c) J.R. should continue to receive monthly SSI benefits from SSA. In support of this claim, defendant KANE provided the SSA with a copy of the lawsuit that M,B,, on behalf of herself and the other K. Family heirs, had filed against J.R.

11

59.     Defendant ALAN KANE also faxed a statement by J.R. to the SSA, which included an admission by J.R. that he did not have a valid interest in the Loney Street Property. J.R. also told the SSA that although he had been deeded the Loney Street Property from "Antonio Rossi," that deed was invalid because "Rossi" had not been the true owner of the property since E.K. had died in 1997, so she could not have deeded the Loney Street Property to "Rossi" in 2009.

60.     Defendant ALAN KANE made all of these representations to the SSA, even though he was continuing to make the exact opposite representations on behalf of J.R. and Frankford Plating in the Philadelphia Court of Common Pleas.

61.     The SSA, relying on the representations made by defendant ALAN KANE and J.R., approved their request for reconsideration of the determination that J.R. must pay back more than $3,600 in overpaid SSI benefits. On or about November 15, 2018, the SSA sent a letter to J.R. stating that based on the facts of the case and the supporting evidence that defendant KANE and J.R. had provided to the SSA, J.R.'s request for reconsideration had been approved and the overpayment had been removed from J.R.'s record.

### J.R.'s Bankruptcy Petition

62.     When J.R. filed his bankruptcy petition on or about March 6, 2019, he indicated that he was doing so under Chapter 7 of the United States Bankruptcy Code. J.R.'s petition was docketed as Bankruptcy Case No. 19-11385 in the United States Bankruptcy Court for the Eastern District of Pennsylvania.

63.     J.R. also filed multiple bankruptcy schedules that required him to, among other things, identify all property he owned, all creditors who had claims against him that were secured by property, all unsecured creditors, all of his income, and all of his expenses.

64.    J.R. signed his bankruptcy petition electronically and declared under penalty of perjury that the information provided in the petition was true and correct.

65.    Defendant ALAN KANE also electronically signed J.R.'s bankruptcy petition and certified that he had "no knowledge after an inquiry that the information in the schedules filed with the petition is incorrect."

66.    On one of his bankruptcy schedules, J.R. falsely identified Frankford Plating as a secured creditor with a claim of $159,000. On another schedule, J.R. falsely represented that his total monthly income was $1,028, which consisted entirely of Social Security benefits and food stamps. J.R. did not disclose any of the money that he received from defendant JONATHAN BARGER on checks drawn on a bank account for Frankford Plating.

67.    On or about September 12, 2019, the bankruptcy trustee reviewing J.R.'s bankruptcy petition held a Meeting of Creditors, pursuant to Section 341 of the Bankruptcy Code (a "Section 341 Hearing").

68.    A Section 341 Hearing was a recorded hearing at which the bankruptcy debtor took an oath to testify truthfully and then answers questions asked by the trustee about representations on the debtor's bankruptcy schedules. Creditors were also permitted to ask questions of a bankruptcy debtor at a Section 341 Hearing.

69.    J.R. was represented by defendant ALAN KANE at his Section 341 Hearing. After taking an oath to tell the truth, J.R. repeatedly provided false testimony, some of which contradicted the representations that both J.R. and defendant KANE had made to the SSA in 2018.

70.    For example, J.R. falsely testified that he was the rightful owner of the Loney Street Property and had purchased it from "Antonio Rossi" for $15,000 in cash. J.R. also

13

falsely testified that he hired Frankford Plating to renovate the Loney Street Property, "and they reconstructed the whole property from roof to the basement." J.R. also falsely testified that Social Security was his only source of income.

71.     Defendant ALAN KANE did not correct any of J.R.'s false testimony, even when it contradicted the representations that both defendant KANE and J.R. had made to the SSA in 2018.

72.     J.R. testified that it was Frankford Plating's idea that J.R. file for bankruptcy and that Frankford Plating was paying for defendant ALAN KANE to represent J.R. in connection with his bankruptcy petition.

73.     On or about December 27, 2019, defendants JONATHAN BARGER and ALAN KANE caused Frankford Plating to file a secured proof of claim against J.R.'s bankruptcy estate for approximately $146,292.17. Defendant BARGER signed the proof of claim as president of Frankford Plating.

74.     Defendants JONATHAN BARGER and ALAN KANE supported Frankford Plating's proof of claim by filing a copy of the fraudulent invoice from Frankford Plating to J.R. in the amount of $133,900, which defendants BARGER and KANE had filed in support of Frankford Plating's amended mechanic's lien.

75.     The bankruptcy trustee ultimately wound up selling the Loney Street Property, with the consent of all parties, for approximately $266,000 in or about March 2021. After paying all tax obligations, brokerage fees, and other expenses, the trustee sent the remaining funds, which approximated $128,277, to M.B. as administratrix of the W.K. estate. The estate then used all of those funds to pay attorneys and other expenses, which left the K. Family heirs with no proceeds from the sale of the Loney Street Property.

## THE SCHEME

76.     From in or about March 2019 through in or about March 2021, in the

Eastern District of Pennsylvania and elsewhere, defendants

## JONATHAN BARGER
## and ALAN KANE,

with the intent to devise a scheme and artifice to defraud various victims, including M.B. and the

other K. Family heirs, and for the purpose of executing and concealing said scheme and artifice,

and attempting to do so, filed and aided and abetted the filing of a false and fraudulent petition

on behalf of J.R. under Title 11, United States Code, filed and aided and abetted the filing of

false and fraudulent documents on behalf of J.R. and Frankford Plating in a proceeding under

Title 11, United States Code, and made and aided and abetted the making of false and fraudulent

representations, claims, and promises concerning and in relation to a proceeding under Title 11,

United States Code, that is, in bankruptcy proceeding docket number 19-11385 in the United

States Bankruptcy Court for the Eastern District of Pennsylvania.

All in violation of Title 18, United States Code, Sections 157 and 2.

**COUNT TWO**
**(Filing a False Claim in a Bankruptcy Proceeding)**

**THE GRAND JURY FURTHER CHARGES THAT:**

          1.      Paragraphs 1 through 75 of Count One of this indictment are incorporated here.

          2.      On or about December 27, 2019, in the Eastern District of Pennsylvania, defendants

**JONATHAN BARGER**
**and ALAN KANE**

knowingly and fraudulently presented a false claim on behalf of Frankford Plating in the amount of $146,292.17 for proof against the estate of J.R., bankruptcy proceeding docket number 19-11385 in the United States Bankruptcy Court for the Eastern District of Pennsylvania, which sum purportedly was due for labor and materials furnished by Frankford Plating for renovations and improvements to the Loney Street Property, when in truth and in fact, as defendants BARGER and KANE each well knew: (a) J.R. never owned the Loney Street Property so J.R. lacked the legal authority to hire Frankford Plating or anyone else to furnish labor and materials for renovations and improvements to the Loney Street Property; (b) J.R.'s claim to the Loney Street Property was based on the recording of two fraudulent deeds; and (c) an invoice from Frankford Plating to J.R., dated July 17, 2017, for work done at the Loney Street Property had been fraudulently created and inflated.

          In violation of Title 18, United States Code, Section 152(4).

## COUNT THREE
### (False Statement to the FBI)

**THE GRAND JURY FURTHER CHARGES THAT:**

      1.     Paragraphs 1 through 75 of Count One of this indictment are incorporated here.

      2.     On or about June 23, 2020, in Warminster, in the Eastern District of Pennsylvania, defendant

### ALAN KANE,

in a matter within the jurisdiction of the United States Department of Justice, an agency of the executive branch of the United States, knowingly and willfully made materially false, fictitious, and fraudulent statements and representations to Special Agents of the Federal Bureau of Investigation, in that defendant KANE told the FBI that the invoice that defendant KANE filed in the Philadelphia Court of Common Pleas in support of Frankford Plating's original mechanic's lien filing on or about December 29, 2017, was the same document as the invoice that defendant KANE filed in the Philadelphia Court of Common Pleas in support of Frankford Plating's amended mechanic's lien filing on or about February 13, 2018, and that the only reason the two documents looked different from each other was because of a problem scanning the document the first time, when, in truth and in fact, as defendant KANE well knew, (a) the two invoices were not the same, and (b) both had been fabricated after July 17, 2017 to support Frankford Plating's fraudulent claim for a mechanic's lien.

      In violation of Title 18, United States Code, Section 1001.

## COUNT FOUR
### (Wire Fraud)

**THE GRAND JURY FURTHER CHARGES THAT:**

1.     Paragraphs 1 through 8 and 13 through 38 of Count One of this indictment are incorporated here.

### THE SCHEME TO DEFRAUD

2.     From at least on or about June 28, 2017 until at least on or about January 31, 2019, defendant

### JONATHAN BARGER

knowingly devised and executed a scheme to defraud the City of Philadelphia out of property taxes due and owing for real estate located at 2324 Loney Street in Philadelphia, in the Eastern District of Pennsylvania, by means of false and fraudulent pretenses, representations and promises.

### MANNER AND MEANS

3.     It was an object of the scheme described in Paragraph 2 for defendant JONATHAN BARGER and J.R. to prevent a sheriff's sale of the Loney Street Property so J.R. could make renovations and improvements to the Loney Street Property and then sell the property for as much money as possible to enrich themselves.

4.     It was a further object of the scheme described in Paragraph 2 for defendant JONATHAN BARGER and J.R. to avoid paying any interest or penalties on the property tax debt that had accrued for the Loney Street Property as of June 2017.

5.     It was a further object of the scheme described in Paragraph 2 for defendant JONATHAN BARGER and J.R. to minimize the amount of money that they would

have to pay to the City of Philadelphia in future property tax obligations for the Loney Street

Property in order to keep the property long enough to sell it.

6.     On or about January 29, 2019, in the Eastern District of Pennsylvania and

elsewhere, defendant

**JONATHAN BARGER**,

for the purpose of executing the scheme described above, knowingly caused to be transmitted by

means of wire communication in interstate commerce an electronic image of a check made

payable to the "City of Phila," signed by defendant BARGER, which was transmitted from a

branch of Wells Fargo Bank in Philadelphia, Pennsylvania, to an out-of-state server, resulting in

the withdrawal of $108 from an account in the name of "JB Frankford Plating LLC" at M&T

Bank on or about January 31, 2019.

All in violation of Title 18, United States Code, Section 1343.

## COUNT FIVE
### (False Statement to the FBI)

**THE GRAND JURY FURTHER CHARGES THAT:**

      1.      Paragraphs 1 through 8 and 13 through 34 of Count One of this indictment are incorporated here.

      2.      On or about October 14, 2020, in Philadelphia, in the Eastern District of Pennsylvania, defendant

### DERRELL JOHNSON,

in a matter within the jurisdiction of the United States Department of Justice, an agency of the executive branch of the United States, knowingly and willfully made materially false, fictitious, and fraudulent statements and representations to Special Agents of the Federal Bureau of Investigation, in that defendant JOHNSON, after being shown copies of the fraudulent deeds purporting to transfer title to the Loney Street Property from E.K. to "Antonio Rossi" and then from "Antonio Rossi" to J.R., said he did not recognize the deeds and had no involvement with the Loney Street Property, when, in truth and in fact, as defendant JOHNSON well knew, (a) defendant JOHNSON had received two emails from Person B, known to the grand jury, each of which contained a draft of a fraudulent deed that purported to transfer the Loney Street Property from E.K. directly to J.R.; (b) defendant JOHNSON got into an argument with Person B about the alterations that had been made to the fraudulent deeds before they were recorded; and (c) defendant JOHNSON received a check from defendant JONATHAN BARGER, charged elsewhere in this indictment, on or about June 9, 2017 in the amount of $5,518 for defendant JOHNSON's role in helping J.R. obtain title to the Loney Street Property.

      In violation of Title 18, United States Code, Section 1001.

## COUNT SIX
### (False Statement to the FBI)

**THE GRAND JURY FURTHER CHARGES THAT:**

1.     Paragraphs 1 through 8 and 13 through 34 of Count One of this indictment are incorporated here.

2.     On or about October 14, 2020, in Philadelphia, in the Eastern District of Pennsylvania, defendant

### DERRELL JOHNSON,

in a matter within the jurisdiction of the United States Department of Justice, an agency of the executive branch of the United States, knowingly and willfully made materially false, fictitious, and fraudulent statements and representations to Special Agents of the Federal Bureau of Investigation, in that defendant JOHNSON, after being shown copies of two checks signed by defendant JONATHAN BARGER, charged elsewhere in this indictment, that were drawn on a Frankford Plating account and made payable to defendant JOHNSON, one dated June 9, 2017 in the amount of $5,518, and the other dated June 30, 2017 in the amount of $5,000, told the FBI agents that the checks were not really for defendant JOHNSON, and that defendant BARGER had told defendant JOHNSON to cash both checks and give the money to Person C, known to the grand jury, because defendant BARGER could not reach Person C, when, in truth and in fact, as defendant JOHNSON well knew, defendant BARGER made both checks payable to defendant JOHNSON because the checks were payments from defendant BARGER for defendant JOHNSON's role in helping J.R. obtain title for the Loney Street Property on or about June 9, 2017, and obtain approval for his OOPA application on or about June 30, 2017.

In violation of Title 18, United States Code, Section 1001.

## COUNT SEVEN
### (Bankruptcy Fraud)

**THE GRAND JURY FURTHER CHARGES THAT:**

1.      Paragraphs 1, 2, 4, 9 through 12, and 68 of Count One of this indictment are incorporated here.

### Defendant JONATHAN Barger's Payments to His Wife

At all times relevant to this indictment:

2.      Defendant JONATHAN BARGER was married and lived in the same house as his wife and minor children.

3.      Defendant JONATHAN BARGER's wife occasionally worked a few hours a week for Frankford Plating, but she was not a regular employee of the company. Defendant BARGER nonetheless signed hundreds of checks drawn on Frankford Plating bank accounts that were made payable to his wife in amounts that typically exceeded several thousand dollars. Defendant BARGER's wife regularly deposited those checks into bank accounts that she controlled and then used the money in those accounts for the benefit of herself, defendant BARGER, and their children.

4.      In or about 2018 alone, defendant JONATHAN BARGER signed Frankford Plating checks made payable to his wife, which had a total value of more than $520,000. Defendant BARGER's wife used that money to support the household she shared with defendant BARGER.

5.      Defendant JONATHAN BARGER did not pay himself a salary, but he effectively used Frankford Plating funds to pay his wife for work that defendant BARGER had done at the company.

### Defendant JONATHAN BARGER's Bankruptcy Filings

6.      On three separate occasions between in or about 2013 and in or about

2019, defendant JONATHAN BARGER filed individual bankruptcy petitions under Chapter 13

of the United States Bankruptcy Code. Defendant BARGER electronically signed each petition

and declared, under penalty of perjury, that the information provided in each petition was true

and correct.

7.      In connection with each petition, defendant JONATHAN BARGER also

filed multiple bankruptcy schedules that required him to, among other things, identify all

property he owned, all creditors who had claims against him that were secured by property, all

unsecured creditors, all of his income, and all of his expenses.

8.      Defendant ALAN KANE electronically signed all three of defendant

JONATHAN BARGER's bankruptcy petitions as the attorney for defendant BARGER, and

certified each time that he had "no knowledge after an inquiry that the information in the

schedules filed with the petition is incorrect."

### Defendant JONATHAN BARGER's 2013 Bankruptcy Petition

9.      On or about October 10, 2013, defendant JONATHAN BARGER,

represented by defendant ALAN KANE, filed a Chapter 13 bankruptcy petition in a case that

was docketed as Bankruptcy Case No. 13-18920.

10.     At the time defendant JONATHAN BARGER filed this petition, Wells

Fargo held a mortgage on the real estate located at 2505 Orthodox Street in Philadelphia, which

housed Frankford Plating (the "Orthodox Street Property")

11.     By filing for bankruptcy, defendant JONATHAN BARGER obtained an

automatic stay of any effort by Wells Fargo Bank to foreclose on its mortgage.

12.     On or about November 11, 2013, defendant JONATHAN BARGER filed

bankruptcy schedules in support of his bankruptcy petition. On one schedule, defendant

BARGER indicated that Wells Fargo Bank held a mortgage on the Orthodox Street Property and

that his debt to Wells Fargo was approximately $227,186.

13.     Defendant JONATHAN BARGER failed to make payments to the

bankruptcy trustee under his proposed repayment plan, and on or about September 24, 2014,

defendant BARGER filed a motion to voluntarily dismiss his bankruptcy petition with a bar on

filing a new petition until on or about April 1, 2015.

14.     On or about October 29, 2014, the Bankruptcy Court granted that motion.

**Defendant JONATHAN BARGER's 2018 Bankruptcy Petition**

15.     At some point between in or about 2014 and in or about 2017, Syndcore

Holdings, LLC ("Syndcore") obtained the mortgage for the Orthodox Street Property.

16.     In or about May 2017, Syndcore filed a foreclosure action on the property

in the Philadelphia Court of Common Pleas. A sheriff's sale was scheduled for in or about July

2018.

17.     On or about July 17, 2018, defendant JONATHAN BARGER filed a

Chapter 13 bankruptcy petition in a case that was docketed as Bankruptcy Case No. 18-14725.

Defendant BARGER electronically signed the petition and declared under penalty of perjury that

"the information provided is true and correct."

18.     Defendant ALAN KANE electronically signed the bankruptcy petition and

certified that he had "no knowledge after an inquiry that the information in the schedules filed

with the petition is incorrect."

24

19.     On or about August 16, 2018, defendant JONATHAN BARGER filed bankruptcy schedules in support of his bankruptcy petition. On one schedule, defendant BARGER represented that he owed the City of Philadelphia approximately $48,087 in taxes on the Orthodox Street Property and that he owed Syndcore approximately $254,231 on the mortgage for the Orthodox Street Property.

20.     On multiple bankruptcy forms, defendant JONATHAN BARGER was asked to disclose all of his household income, and he repeatedly did not disclose his wife's income from Frankford Plating. Defendant BARGER also falsely claimed on one form that Frankford Plating had no value.

21.     Defendant JONATHAN BARGER also tried to use his 2018 bankruptcy filing to shrink the amount of his indebtedness to Syndcore on the Orthodox Street Property by claiming that the land on which the building sat had been environmentally contaminated and was then worth only $25,000, so that his debt to Syndcore should be reduced accordingly.

22.     On or about December 12, 2018, the Bankruptcy Court dismissed the bankruptcy petition because defendant JONATHAN BARGER had failed to make payments under the proposed repayment plan.

**Defendant JONATHAN BARGER's 2019 Bankruptcy Petition**

23.     Shortly after defendant JONATHAN BARGER's 2018 bankruptcy petition was dismissed, Syndcore rescheduled the sheriff's sale for the Orthodox Street Property to on or about January 16, 2019.

24.     On or about January 15, 2019, defendant JONATHAN BARGER filed a Chapter 13 bankruptcy petition in a case that was docketed as Bankruptcy Case No. 19-10254. The filing of this petition caused an automatic stay of the sheriff's sale. Defendant BARGER electronically signed the petition and declared under penalty of perjury that "the information provided is true and correct."

25.     Defendant ALAN KANE electronically signed the bankruptcy petition and certified that he had "no knowledge after an inquiry that the information in the schedules filed with the petition is incorrect."

26.     On or about February 12, 2019, defendant JONATHAN BARGER filed bankruptcy schedules in support of his bankruptcy petition, a few of which he subsequently amended. On one form, a "Schedule A/B," defendant BARGER falsely stated that although he was the 100 percent owner of Frankford Plating, the company had no value.

27.     On other forms, defendant JONATHAN BARGER hid his wife's income from the bankruptcy trustee and his creditors. For example, on "Official Form 122C-1," a form used by the trustee to determine the ability of a debtor to repay creditors through his bankruptcy plan, defendant BARGER listed no income for his wife and represented that his average monthly household income for the previous six months had been $11,500, even though it was actually more than approximately $21,718, including his wife's income.

26

28.     Similarly, on or about June 17, 2019, defendant JONATHAN BARGER filed an amended "Schedule I" form, which asked him to disclose his and his wife's average monthly household income for the six months immediately preceding his bankruptcy filing. Defendant BARGER identified no income for his wife and represented that his average monthly household income during that time was approximately $16,100.

29.     On or about March 15, 2019, the bankruptcy trustee reviewing defendant JONATHAN BARGER's bankruptcy petition held a Section 341 Hearing on the petition.

30.     Defendant ALAN KANE represented defendant JONATHAN BARGER at the Section 341 Hearing. During the hearing, and after defendant BARGER was placed under oath, the trustee directly asked defendant BARGER whether his wife was employed. Defendant BARGER, who was under oath, responded, "well she's self-employed. She does cosmetic sales." Defendant KANE then interjected, "I believe she only makes a couple thousand dollars a year, is it?" Defendant BARGER said, "Yes."

31.     From at least in or about January 15, 2019 through at least in or about September 23, 2020, in the Eastern District of Pennsylvania, defendants

**JONATHAN BARGER**
**and ALAN KANE**,

with the intent to devise a scheme and artifice to defraud various victims, including Syndcore, and for the purpose of executing and concealing said scheme and artifice, and attempting to do so, filed and aided and abetted the filing of a false and fraudulent petition on behalf of defendant BARGER under Title 11, United States Code, filed and aided and abetted the filing of false and fraudulent documents on behalf of defendant BARGER in a proceeding under Title 11, United States Code, and made and aided and abetted the making of false and fraudulent representations, claims, and promises concerning and in relation to a proceeding under Title 11, United States

27

Code, that is, in bankruptcy proceeding docket number 19-10254 in the United States

Bankruptcy Court for the Eastern District of Pennsylvania.

        All in violation of Title 18, United States Code, Sections 157 and 2.

## COUNT EIGHT
### (Fraudulent Concealing of Assets in a Bankruptcy Proceeding)

**THE GRAND JURY FURTHER CHARGES THAT:**

1.    Paragraphs 1 through 30 of Count Seven of this indictment are incorporated here.

2.    From at least on or about January 15, 2019 until at least on or about June 17, 2019, in the Eastern District of Pennsylvania, defendant

### JONATHAN BARGER

knowingly and fraudulently concealed property belonging to the bankruptcy estate of defendant BARGER, Bankruptcy Case No. 19-10254, specifically income received by defendant BARGER's wife, from the trustee charged with administration of defendant BARGER's bankruptcy repayment plan and from the creditors and the United States Trustee.

In violation of Title 18, United States Code, Section 152(1).

**COUNT NINE**
**(False Statements Under Oath in a Bankruptcy Proceeding)**

**THE GRAND JURY FURTHER CHARGES THAT:**

1.      Paragraphs 1 through 30 of Count Seven of this indictment are incorporated here.

2.      On or about March 15, 2019, in the Eastern District of Pennsylvania, defendant

**JONATHAN BARGER**

knowingly and fraudulently made a false material statement under oath in and in relation to a case under Title 11, Bankruptcy Case No. 19-10254, by falsely testifying under oath in a proceeding before the bankruptcy trustee that defendant BARGER's wife earned only a couple thousand dollars a year in income.

In violation of Title 18, United States Code, Section 152(2).

## COUNT TEN
### (False Declaration in a Bankruptcy Proceeding)

### THE GRAND JURY FURTHER CHARGES THAT:

1.    Paragraphs 1 through 30 of Count Seven of this indictment are

incorporated here.

2.    On or about February 12, 2019, in the Eastern District of Pennsylvania,

defendant

### JONATHAN BARGER

knowingly and fraudulently made a material false declaration, certificate and verification under

the penalty of perjury, as permitted under Section 1746 of Title 28, in and in relation to a case

under Title 11, Bankruptcy Case No. 19-10254, by submitting a Schedule A/B on which

defendant BARGER fraudulently stated that a company in which he owned 100 percent of the

stock had a total value of $0.00.

In violation of Title 18, United States Code, Section 152(3).

**COUNT ELEVEN**
**(False Declaration in a Bankruptcy Proceeding)**

**THE GRAND JURY FURTHER CHARGES THAT:**

1.    Paragraphs 1 through 30 of Count Seven of this indictment are incorporated here.

2.    On or about February 12, 2019, in the Eastern District of Pennsylvania, defendant

**JONATHAN BARGER**

knowingly and fraudulently made a material false declaration, certificate and verification under the penalty of perjury, as permitted under Section 1746 of Title 28, in and in relation to a case under Title 11, Bankruptcy Case No. 19-10254, by submitting an "Official Form 122C-1," on which defendant BARGER fraudulently omitted to disclose his wife's income and falsely represented that his average household monthly income for the six months preceding his bankruptcy filing was $11,500, when in reality, it was more than approximately $21,700.

In violation of Title 18, United States Code, Section 152(3).

## COUNT TWELVE
### (False Declaration in a Bankruptcy Proceeding)

**THE GRAND JURY FURTHER CHARGES THAT:**

1. Paragraphs 1 through 30 of Count Seven of this indictment are

incorporated here.

2. On or about June 17, 2019, in the Eastern District of Pennsylvania,

defendant

### JONATHAN BARGER

knowingly and fraudulently made a material false declaration, certificate and verification under

the penalty of perjury, as permitted under Section 1746 of Title 28, in and in relation to a case

under Title 11, Bankruptcy Case No. 19-10254, by submitting an "Schedule I: Your Income"

form on which defendant BARGER fraudulently omitted to disclose his wife's income and

falsely represented that his average household monthly income for the six months preceding his

bankruptcy filing was $16,100, when in reality, it was more than approximately $21,700.

In violation of Title 18, United States Code, Section 152(3).

## NOTICE OF FORFEITURE

**THE GRAND JURY FURTHER CHARGES THAT:**

    1.  As a result of the violations of Title 18, United States Code, Sections 152 and 1343, set forth in this indictment, defendants

**JONATHAN BARGER**
**and ALAN KANE**

shall forfeit to the United States of America any property, real or personal, that constitutes or is derived from proceeds traceable to the commission of such violations.

    2.  If any of the property subject to forfeiture, as a result of any act or omission of the defendants:

      (a)  cannot be located upon the exercise of due diligence;

      (b)  has been transferred or sold to, or deposited with, a third party;

      (c)  has been placed beyond the jurisdiction of the Court;

      (d)  has been substantially diminished in value; or

      (e)  has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to Title 28, United States Code, Section 2461(c), incorporating Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of the defendants up to the value of the property subject to forfeiture.

All pursuant to Title 28, United States Code, Section 2461(c) and Title 18, United

States Code, Section 981(a)(1)(C).

**A TRUE BILL:**

**GRAND JURY FOREPERSON**

**JACQUELINE C. ROMERO**
**UNITED STATES ATTORNEY**

35

No._ _ _ _ _ _ _ _ _ _

**UNITED STATES DISTRICT COURT**

Eastern District of Pennsylvania

Criminal Division

THE UNITED STATES OF AMERICA

vs.

**JONATHAN BARGER, ALAN KANE, and DERRELL JOHNSON**

INDICTMENT

Counts

**18 U.S.C. § 157 (bankruptcy fraud – 2 counts)**
**18 U.S.C. § 152(1) (fraudulent concealing of assets in a bankruptcy proceeding – 1 count)**
**18 U.S.C. § 152(2) (false statements under oath in a bankruptcy proceeding – 1 count)**
**18 U.S.C. § 152(3) (false declarations in a bankruptcy proceeding – 3 counts)**
**18 U.S.C. § 152(4) (filing a false claim in a bankruptcy proceeding – 1 count)**
**18 U.S.C. § 1343 (wire fraud – 1 count)**
**18 U.S.C. § 1001 (false statement to the federal government – 3 counts)**
**18 U.S.C. § 2 (aiding and abetting) Notice of Forfeiture**

A true bill.

_____
Foreperson

Filed in open court this _____ 11 _____ day,

Of January _____ A.D. 20 24

Shannon o'neill

_____
Foreperson

Bail, $_____